UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| FRANK KRAUSE, et al. | : |
| Plaintiffs, | : Civil Action No. 09-2871 (JAP) |
| v. | : |
|  | : **OPINION** |
| MANALAPAN TOWNSHIP | : |
| Defendant. | : |

PISANO, District Judge.

Plaintiffs are a current and former patrolmen with the Manalapan Police Department and were members of Manalapan Township's (the "Township's") now defunct K9 Unit. They bring this action under the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA") alleging that Defendant failed to pay them overtime compensation for time spent caring for their police dogs outside of their regular shifts. Presently before the Court are Plaintiffs' motion for summary judgment and Defendant's cross-motion for summary judgment. The Court has carefully reviewed all the materials submitted by the parties and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Plaintiffs' motion for summary judgment is denied and Defendant's cross motion for summary judgment is granted.

**I. Background**

Plaintiff Frank Krause was employed by the Manalapan Police Department (the "Department") as a patrolman from approximately 1994 to 2009. Plaintiff William Martin, as

of the time of the filing of the instant motions, was also a patrolman with the Department, having been with the Department since 1988.  In January of 2000, both Krause and Martin became K9 officers, *i.e.*, members of the then-newly formed K9 unit.

The formation of the Township's K9 unit was spearheaded by Krause, who testified that it was his childhood dream to become a K9 officer.  Krause Dep. at 12:9-20 attached as Ex. A to English Cert.  Early in the tenure of Police Chief John McCormack, who became Police Chief in 1997, Krause raised with McCormack the idea of creating a K9 unit within the Police Department.  After making the proposal, Krause conducted several years of research into developing a K9 unit, which included Krause contacting other agencies to understand the costs associated with running a K9 unit.  The Township ultimately formed the K9 unit in 2000.  Krause and Martin became the Department's K9 officers.

As K9 officers, Krause and Martin were each responsible for one dog.  The Township did not have a central kennel to house the dogs, rather, the dogs lived with each officer in the officer's home.  The officers were responsible for all aspects of the dogs' care such as grooming, walking, bathing, feeding, taking the dogs to the vet, administering medication if necessary, exercising the dogs before and after their shifts, keeping their police vehicles clean, keeping their homes clean as relating to the dogs, insect prevention in their homes, physical examination of the dogs, cleaning dog waste, sanitizing their yards, maintaining fences on their property, ensuring that the dog's teeth were healthy, providing flea and parasite control, and providing ongoing training.  Given the nature of dog care, not all of these care tasks could be completed while on duty, so the officers spent off duty time caring for their dogs as well.

Martin served as a K9 officer until 2007, and Krause served as a K9 officer until 2008.  In 2008, after the death of the dog assigned to Krause, the K9 unit was terminated.  In early

2009, Plaintiffs filed the instant lawsuit alleging that Defendant failed to pay Plaintiffs overtime compensation for the time they spent off-duty caring for their canines. In light of the applicable statute of limitations, they seek to recover past overtime compensation for a three-year period, liquidated damages and attorneys' fees.

## II. Analysis

### A. Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of

the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  The Parties' Motions

Plaintiffs seek summary judgment on three issues. First, Plaintiffs seek judgment that Defendant is liable under the FLSA for overtime payments for the time Plaintiffs spent caring for their dogs. Second, Plaintiffs ask the Court to rule that the standard for determining the time for which Plaintiffs should be compensated is "work that was done at the direction of the defendant or for the defendant's benefit." Pl. Brf. at 1. Last, Plaintiffs seek summary judgment that they will be entitled to liquidated damages in the amount of the award they receive at trial.

Defendant has cross-moved for summary judgment, seeking summary judgment on Plaintiffs' claims in their entirety, arguing that a fair and binding agreement existed between the parties which, under FLSA regulations, precludes Plaintiffs' FLSA claims. Alternatively, if the Court allows Plaintiffs' claims to proceed, Defendant seeks a decision that a two-year – not three-year – statute of limitation applies to Plaintiffs' claims.

Defendant does not dispute that Plaintiffs were entitled to be compensated for hours worked in excess of forty hours per week,[1] that Plaintiffs spent off-duty hours caring for their

---

[1] The FLSA provides in relevant part as follows:

> no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one- half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

4

canines, or that caring for the canines was compensable work under the FSLA.[2] Thus, the threshold issue for the Court to determine is whether, as Defendant alleges, an agreement existed between the parties which precludes Plaintiffs' claims under the FLSA.

Federal regulations, specifically, 29 C.F.R. § 785.23, "provide[] an exemption from the overtime pay requirement for employers whose employees work from their homes for extended periods of time, such that it would be difficult to compute the exact number of hours actually worked by the employee." *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2004).[3] This regulation provides, in the pertinent part,

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and *any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted*.

29 C.F.R. § 785.23 (emphasis added). Courts have noted that "the indeterminate nature of [a police dog handler's] tasks makes them exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate complicated, repetitious, and hard to resolve disputes about exactly how much time it took to take care of the dogs each day." *Brock v.*

---

[2] Indeed, courts have found that time spent caring for police dogs is compensable under the FSLA. *See, e.g.*, *Leever v. Carson City*, 360 F.3d 1014, 1017 n. 1 (9th Cir. 2004); *Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 522 (2d Cir.1998); *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir.1995); *Karr v. City of Beaumont, Texas*, 950 F. Supp. 1317 (E.D.Tex.1997); *Levering v. District of Columbia*, 869 F. Supp. 24 (D.D.C.1994); *Nichols v. City of Chicago*, 789 F. Supp. 1438 (N.D.Ill.1992); *Truslow v. Spotsylvania County Sheriff*, 783 F. Supp. 274 (E.D. Va. 1992); *Albanese v. Bergen County*, 991 F. Supp. 410 (D.N.J. 1997); *Andrews v. DuBois*, 888 F. Supp. 213 (D.Mass.1995); *Hellmers v. Town of Vestal*, 969 F. Supp. 837 (N.D.N.Y. 1997); *Baker v. Stone County*, 41 F. Supp.2d 965 (W.D. Mo.1999).

[3] Although the Ninth Circuit refers "to § 785.23 as providing for an 'exemption' or 'exception'" to the FSLA, that court as well as this Court "recognize that '[r]ather than providing employers with an exception to the FLSA overtime pay requirements, § 785.23 simply offers a methodology for calculating how many hours the employees actually worked within the meaning of the FLSA.'" *Leever*, 360 F.3d at 1017 n.2.

*City of Cincinnati*, 236 F.3d 793, 805 (6th Cir. 2001) (quoting *Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir. 1996)).  Where a defendant seeks to benefit from § 785.23, it is that defendant's "burden of proving 'plainly and unmistakably,' that (1) there was an agreement to compensate [plaintiff] for [his] overtime work ..., and (2) the agreement was 'reasonable,' having taken into account 'all of the pertinent facts.'" *Leever*, 360 F.3d 1014, 1018 (9th Cir. 2004)

   Here, Defendant alleges there was such an agreement.  At a meeting in late 1999 or early 2000 between Plaintiffs and Chief McCormack, Chief McCormack told the officers that they would "have to be compensated on the handling of the dog."  Curtis Cert., Ex. A (Krause Dep.) at 24:22-23.  As compensation, Chief McCormack proposed that the officers work one less hour per shift, *e.g.*, the officers were permitted to come into work an hour later or leave an hour early than their shift would normally start or end, this hour being "comp time" for the time spent caring for the dog.  *See* Curtis Cert., Ex. B (Martin Dep.) at 7:24 to 8:12 (referring to the hour as "comp time").  The specific hour per shift allotted to each officer was not necessarily meant to be used to care for the dog, but was intended as an "hour of compensation for taking care of the canine."  Curtis Cert., Ex. A (Krause Dep.) at 39:7-12.

   The officers accepted McCormack's proposal and the agreement was immediately put into place.  Later, this arrangement became part of the collective bargaining agreements ("CBA") negotiated by Plaintiffs' Police Benevolent Association ("PBA") and the Township.  *See* CBAs attached as Exs. D (effective 2004 to 2006) and E (effective 2007 to 2011) to Curtis Cert. ("Officers functioning as K-9 Officers are entitled to one hour per shift for maintenance time to care for the K-9s.").

As K9 officers, Plaintiffs worked four shifts per week. Each shift was a 10-hour shift, of which Plaintiffs would work only nine. By way of example, if they worked the 2 p.m. to 12 a.m. shift, Plaintiffs would report to work at 3 p.m. instead of 2 p.m. If for some reason the officers worked the full ten hours, they would get paid an hour of overtime compensation. Moreno Dep. at 60. As noted above, the additional hour each shift was given to the Plaintiffs as compensation for the off-duty time they spent caring for their dogs and, therefore, each week, Plaintiff received 4 hours "comp" time.

Plaintiffs do not dispute the existence of an agreement. However, they argue that the agreement reached between the parties regarding the one hour of "comp" time does not satisfy the requirements of § 785.23. First, Plaintiffs claim that the agreement at issue failed to take into consideration "all of the pertinent facts." *See* § 785.23. Specifically, Plaintiffs assert that the agreement failed to take into consideration "the plaintiff's rights and the defendant's obligations under the FLSA." Pl. Opp. at 12.

Contrary to Plaintiffs' assertion, the Court finds that the parties' agreement did take all appropriate considerations into account, particularly the parties' rights and obligations under the FLSA. It is undisputed that at the time the Department was in the process of forming the K9 unit, Chief McCormack was aware that officers were to be paid overtime for working in excess of 40 hours per week. DSOF[4] at ¶ 9. Thus, Chief McCormack having such knowledge, the only reasonable inference to be drawn from (1) Chief McCormack's statement that the officers had to "be compensated on the handling of the dog;" and (2) his proposal to the officers that the Department provide them "comp" time, was that his proposal was intended to address the plaintiffs' rights and defendant's obligations under the FLSA. *See*

---

[4] Reference to Defendant's Supplementary Statement of Material Facts is abbreviated as "DSOF".

Curtis Cert., Ex. A (Krause Dep.) at 24:22-23. Said another way, Chief McCormack's proposal was intended to compensate Plaintiffs for the additional off-duty work that caring for the dog would require. Indeed, the Plaintiffs themselves admit that the hour was provided to them as "compensation" or "comp" time, indicating awareness of their entitlement to be compensated for the additional work. Moreover, case law is clear that an agreement under § 785.23 does not have to expressly reference the FLSA. As noted in *Brock*,

> The parties did not need to use the specific term "FLSA" in the [collective bargaining agreement]. As long as the collective bargaining process produced an agreement in fact and the parties were cognizant that the agreement had to deal with the employees' FLSA rights, this court can proceed to the question of whether the parties reached a reasonable agreement that addressed their FLSA rights.

236 F.3d at 808.

The Court next turns to the question of whether the parties' agreement was reasonable. Plaintiffs argue that it is not.

On the question of reasonableness, the "court's task is not to find *the* reasonable agreement, for none exists." *Brock*, 236 F.3d at 806 (emphasis in original). Rather, the Court "must ascertain whether this agreement falls within a broad zone of reasonableness, considering its terms and all of the facts and circumstances of the parties' relationship." *Id.* Because § 785.23 "encompasses a wide range of employment relationships and circum-stances, …. there is no single generic test for 'reasonableness' under section 785.23." *Garofolo v. Donald B. Heslep Associates, Inc.*, 405 F.3d 194, 199 (4th Cir. 2005). "Ultimately, an agreement reached pursuant to section 785.23 is binding if it is reasonable in light of 'all of the pertinent facts' of the employment relationship." *Id.*

8

Several circuit court decisions have interpreted § 785.23 under circumstances similar to the instant case. In *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 520 (2d Cir. 1998), an officer alleged that he spent up to 45 off-duty hours per week working with his assigned police dog. As far as compensation for this time, the officer had been instructed by his employer to fill out a weekly overtime slip requesting two hours' pay and not calculate the actual amount of time he spent caring for the dog. *Id.* The *Holzapfel* Court held that there was no "agreement" between the employee and the employer because the two-hour overtime limit was imposed on the employee unilaterally. *Id.* at 526. The court further noted that even if there had been an agreement, it would have been unreasonable as a matter of law because the employer knew that the employee worked at least seven off-duty hours per week, but the agreement only provided for two hours of overtime pay. *Id.* at 526-27. Therefore, the court found that the agreement did not preclude the plaintiff's FLSA claim. *Id.* at 527.

In *Rudolph v. Metropolitan Airports Commission*, 103 F.3d 677, 678 (8th Cir. 1996), two police officers sued their employer for overtime wages for their off-duty work with their police dogs. The officers' contract provided that, as compensation for their overtime work with their dogs, they would be paid one half-hour of overtime per on-duty day and one hour of overtime per off-duty day. *Id.* at 679. Pursuant to the contract, the officers were not to spend more time caring for their dogs than they were paid for without seeking prior approval from the employer. *Id.* at 683. The Eighth Circuit held that the agreement was reasonable, even though the employees alleged that they regularly worked in excess of the time for which they were paid, because the employees agreed not to do so and the employer was entitled to rely on the clear terms of the agreement. *Id.* at 684.

In *Brock*, the Sixth Circuit took the approach of reviewing all of "the facts and circumstances revealed in the record," in order to determine whether an agreement to compensate K9 officers for their overtime work was reasonable. *Id.* at 807. The court stated that when evaluating the reasonableness of an agreement under § 785.23, it considered "[the contract's] terms and all of the facts and circumstances of the parties' relationship." *Id.* at 806. Under *Brock's* approach, the actual amount of time spent working was "a reference point for a range of reasonable agreements," but that the range was "widened by a variety of non-monetary costs and benefits" provided by the employer. *Id.* at 807. The contract at issue provided for straight-time compensation of approximately 17 minutes a day, which the court found to be reasonable viewed in light of all the circumstances:

> Nothing disclosed in the record indicates that Cincinnati must have known that 17 minutes per day of compensatory time far under-approximated the actual amount of FLSA "work" performed by the plaintiffs. Moreover, nothing indicates that the non-monetary support that the City provided to plaintiffs in the form of a take-home cruiser, taxpayer-provided dog food, veterinary care, a kennel, travel to competitions, and on-duty training days failed to compensate them reasonably for any deficiency the seventeen minutes of straight-time pay embodied in the CBA's dog day may have left.

*Id.*

In *Leever v. City of Carson*, 360 F.3d 1014 (9th Cir. 2004), a police officer sought compensation for off-duty time spent caring for a police dog. The defendant city paid the officer a flat fee of $60 biweekly for overtime associated with the care of the dog in accordance with its collective bargaining agreement with the police union. *Id.* at 1016. The circuit court reverse a grant of summary judgment in favor the city, finding that the city did not inquire into the actual hours worked by the officer and made no effort to approximate the time involved. *Id.* at 1021. The court held that "[a]n agreement must take into account some

10

approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work." *Id.* at 1019.

Viewing the facts of this case in the light most favorable to the Plaintiffs, the Court concludes that there are no triable issues with respect to whether the agreement providing them with four hours of "comp" time per week was reasonable. As an initial matter, unlike in *Holzapfel* for example, the agreement regarding "comp" time was not unilaterally imposed upon the Plaintiffs and, as such, reflects the parties consensus as to how much off-duty dog care time could be deemed compensable work. Here, the record shows that the parties -- indeed the officers *themselves* and not merely a representative -- worked closely with Chief McCormack to reach the agreement regarding the one hour "comp" time.[5] *See* English Cert. Ex. C (McCormack Dep.) at 11:2-14.

Additionally, there is no evidence that Defendant had actual or constructive knowledge that Plaintiffs spent time in excess of their allotted hour caring for their assigned dogs. Given the unique circumstances in this case where the Plaintiffs themselves were instrumental in the formation of the K9 unit, it was not unreasonable for the Defendant to rely upon the parties' agreement that an hour was an appropriate estimate of the compensable time Plaintiffs spent caring for the dog and, therefore, not inquire on an ongoing basis. Further, even if the parties' under-approximated the actual amount of compensable work, the Court notes, as in *Brock*, Plaintiffs were provided with significant nonmonetary support in the form of initial and on-going training, veterinary care and a dedicated take-home police vehicle.

---

[5] To the extent that Plaintiffs argue that the basis for the parties' agreement of one hour was just a "guess" as to how much time the officers would spend caring for their canines, the Court rejects the argument as a mischaracterization of McCormack's deposition testimony. *See* English Decl. at Ex. C (McCormack Dep. at 11:5-8) ("Q: How did you come up with an hour as opposed to 45 minutes, a half hour, a day? A: It would only be, at this point, a guess, but I believe Frank and Billy and I had agreed on one hour from what I can recall. You know, you're talking almost ten years now.")

English Cert Ex. B (Martin Dep.) 16:5-11; Curtis Cert. Ex. A (Krause Dep.) 22:4-14; 24:5-13; 25:8 to 26:19; Ex. C (Moreto Dep.) 34:9-19.  Thus, the Court rejects Plaintiffs' argument that the agreement was unreasonable because Defendant failed to take into account how many hours Plaintiffs would actually work.

Plaintiffs' only other argument relating to the reasonableness of the agreement is their assertion that the agreement is unreasonable because there were times when the officers' K9 hour conflicted with their squad's physical fitness training ("PT") time, and as a result the officers often missed this PT time.  However, nothing in the record shows that Plaintiffs were ever prohibited from working out to maintain their physical fitness.  Further, Martin testified that PT time is "not set in stone", that is, it is not part of the collective bargaining agreement and officers do not always get PT time.  Consequently, the Court finds that the occasional conflict between Plaintiffs' K9 hour and their squad's PT time does not render the agreement unreasonable.

Accordingly, the Court finds that the agreement between the parties is reasonable and, therefore, Defendant is entitled to summary judgment on Plaintiffs' claims.

## IV.  Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.  An appropriate Order shall accompany this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  September 30, 2011